IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JESUS QUEZADA,

      Plaintiff,

vs.                                            No. 1:17-CV-01163-LF

NANCY A. BERRYHILL,
Acting Commissioner of the
Social Security Administration,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on plaintiff Jesus Quezada's Motion to Reverse or Remand for a Rehearing with Supporting Memorandum (Doc. 17), which was fully briefed on August 10, 2018. Docs. 20, 21, 22. The parties consented to my entering final judgment in this case. Docs. 6, 7, 8. Having meticulously reviewed the record and being fully advised in the premises, the Court finds that the Administrative Law Judge ("ALJ") failed to properly resolve the conflict between the Dictionary of Occupational Titles ("DOT") and the vocational expert's ("VE") testimony. The Court therefore GRANTS Mr. Quezada's motion and remands this case for an immediate award of benefits.

**I.    Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision[1] is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue,* 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports

---

[1] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 416.1581, as it is in this case.

the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart,* 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005).

> The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.

*Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal quotations and citations omitted) (brackets in original).

## II. Applicable Law and Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity"; (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) the impairment(s) either meet or equal one of the Listings[2] of presumptively disabling impairments; or (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. § 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1260–61. If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id*.

### III. Background and Procedural History

Mr. Quezada is a 52-year-old man who lives with his long-term girlfriend. AR 159, 174, 185, 202, 480, 482, 554.[3] Mr. Quezada completed the sixth grade in Mexico and is able to read, speak, and write fluently in the Spanish language, although not in English. AR 34, 480, 482,

---

[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

[3] Document 12-1 comprises the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

3

749. Mr. Quezada has a history of working as a roofer, but stopped working in 2008 due to a knee injury. AR 34, 165, 482, 545.

Mr. Quezada filed his initial application for Disability Insurance Benefits ("DIB") on October 29, 2008, alleging disability beginning on March 10, 2008 due to a right knee injury, diabetes, and high blood pressure (hbp). AR 137–43, 164. The Social Security Administration ("SSA") denied his claims initially and on reconsideration. AR 65–72, 79–81. On April 26, 2010, Mr. Quezada requested a hearing. AR 82–83. On May 19, 2011, ALJ Ann Farris held a hearing, at which Mr. Quezada testified with the assistance of an interpreter. AR 28–53. ALJ Ferris issued an unfavorable decision on July 7, 2011. AR 9–27. Mr. Quezada requested review by the Appeals Council, which denied the request on September 20, 2012. AR 1–8, 134−35.

On November 20, 2012, Mr. Quezada appealed the Commissioner's decision to this Court. *See Quezada v. Social Security Administration*, 1:12-cv-01204-MCA-WPL (D.N.M. 2012). On September 9, 2013, the Commissioner agreed to remand the case "pursuant to sentence four (4) of § 205(g) of the Social Security Act, 42 U.S.C. § 405(g). *Melkonyan v. Sullivan*, 501 U.S. 89 (1991)." AR 561−62. During the pendency of the appeal, on April 12, 2013, Mr. Quezada applied for supplemental security income ("SSI"). AR 567. The state agency[4] issued a favorable determination on September 20, 2013, finding Mr. Quezada disabled beginning April 1, 2013. *Id*. Subsequently, on October 21, 2013, the Appeals Council issued an

---

[4] The SSA works with states "to provide and maintain an effective system for processing claims of those who apply for and who are receiving" disability benefits. 20 C.F.R. § 404.1603. State agencies generally make initial "determinations of disability with respect to all persons in the State." 20 C.F.R. § 404.1613. In New Mexico, the New Mexico Disability Determination Services ("NMDDS") makes those determinations. NMDDS must comply with SSA regulations. 20 C.F.R. § 404.1603(a) ("The State will comply with our regulations and other written guidelines."). *Armstrong v. New Mexico Disability Determination Servs.*, 278 F. Supp. 3d 1193, 1200 (D.N.M. 2017).

4

order remanding the DIB case to an ALJ for further proceedings in accordance with the order of the District Court. AR 567–69. In its October 2013 order, the Appeals Council affirmed the state agency determination that Mr. Quezada was disabled beginning April 1, 2013, but ordered that "the period prior to April 1, 2013 requires further administrative proceedings." AR 567.

Pursuant to the October 2013 order of the Appeals Council, ALJ Farris held another hearing on November 5, 2014. AR 523, 540–59. Mr. Quezada testified at the November 2014 hearing with the assistance of an interpreter. AR 540, 542. ALJ Farris issued a second unfavorable decision on December 19, 2014. AR 517–39. Pursuant to 20 C.F.R. § 404.984(a), (c), and (d), the 2014 ALJ decision became the final decision of the Commissioner on February 17, 2015 because no exceptions were filed, and the Appeals Council did not assume jurisdiction. On April 7, 2015, Mr. Quezada once again appealed the Commissioner's final decision to this Court. *See Quezada v. Social Security Administration*, 1:15-cv-00282-LAM (D.N.M. 2015). This Court remanded the case "for consideration of the sole issue of the date of onset of Plaintiff's disability . . . ."[5] AR 820–21.

On remand, ALJ Raul C. Pardo held a brief hearing on February 15, 2017. AR 762–69. Mr. Quezada appeared at the hearing and was assisted by an interpreter. AR 762, 764, 768. A VE, Tom Griner, was also present. AR 762, 764. The February 2017 hearing was continued

---

[5] "[DIB] benefits may be paid for as many as 12 months before the month an application is filed," but cannot be paid unless the onset of disability occurs while the claimant is still covered by DIB insurance. SSR 83-20, 1983 WL 31249, at *1. SSI payments, however, are not limited by the claimant's insured status at the time of disability onset, and are simply "prorated for the first month for which eligibility is established after application and after a period of ineligibility." *Id.* Because Mr. Quezada filed his SSI claim in April 2013, the disability decision could only award disability SSI benefits from April 1, 2013. Onset of disability dates are not ordinarily determined in SSI cases. *Id.* Thus, the disability decision does not constitute a finding that Mr. Quezada's disability—which is determined identically in DIB and SSI cases—had an onset date of April 1, 2013.

5

because a medical expert was not present. AR 766–68. The hearing was rescheduled for June 15, 2017. AR 770–99. Mr. Quezada was not present during the June 2017 hearing, but he was represented by counsel. AR 772. Testimony was taken from two medical experts and a VE, Phunda Yarbrough. AR 738, 770–95. The hearing specifically focused on the period from March 10, 2008 to March 31, 2013. AR 772. ALJ Pardo issued his unfavorable decision on July 27, 2017. AR 732–61. Once again, Mr. Quezada did not file exceptions to the ALJ's decision, and the Appeals Council did not assume jurisdiction. Instead, Mr. Quezada opted to file a complaint in this Court. Doc. 1. It is this third decision by ALJ Pardo—based on Mr. Quezada's October 2008 application—that forms the basis for this appeal.

Because Mr. Quezada already had been found to be disabled, the issue before ALJ Pardo was limited to when Mr. Quezada's disability began. AR 738. The ALJ concluded that

> the claimant has been under a disability within the meaning of the Social Security Act beginning May 28, 2011, but not before. Since the claimant was not under a disability within the meaning of the Social Security Act from March 10, 2008, though the date last insured of December 31, 2009, he is not entitled to benefits under sections 216(i) and 223(d) of the Social Security Act.

AR 739. The ALJ found that Mr. Quezada was disabled as of May 28, 2011—the date he attained the age 45[6]—because a finding of "disabled" was directed by Medical-Vocational Rule 201.17.[7] AR 752.

---

[6] An individual attains a given age on the first moment of the day preceding the anniversary of his birth corresponding to such age. 20 C.F.R. §§ 404.2(c)4, 416.120(c)(4).

[7] The medical-vocational guidelines (sometimes referred to as the "grids") provide that when findings of fact made with respect to a particular individual's vocational capacity coincide with all the criteria of a particular grid rule, the rule directs a conclusion as to whether the individual is or is not disabled. *See* 20 C.F.R. Part 404, Subpart P, Appendix 2, at § 200.00. Grid Rule 201.17 provides that a younger individual (age 45–49) who is illiterate or unable to communicate in English, and whose previous work experience is unskilled, is determined to be disabled. *Id.* at § 201.17.

6

Following the five-step sequential evaluation process, the ALJ determined that Mr. Quezada met the insured status requirements of the Social Security Act through December 31, 2009. AR 741. At step one, the ALJ found that Mr. Quezada had not engaged in substantial, gainful activity since March 10, 2008, the alleged onset date. *Id*. Because Mr. Quezada had not engaged in substantial gainful activity for at least twelve months, the ALJ proceeded to step two. At step two, the ALJ found that Mr. Quezada had the following severe impairments: "right medial meniscal tear status post subtotal meniscectomy, patella-femoral syndrome, type II diabetes, anxiety, and depression." *Id.* (citation omitted). The ALJ found that Mr. Quezada's hypertension was non-severe. *Id*.

At step three, the ALJ found that prior to May 28, 2011, none of Mr. Quezada's impairments, alone or in combination, met or medically equaled a Listing. AR 741–43. Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Mr. Quezada's RFC. AR 743–51. The ALJ found that:

> prior to May 28, 2011, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that he could lift and/or carry 20 pounds occasionally and less than 10 pounds frequently; push and/or pull as much as he could lift/carry; perform simple, routine tasks; and respond appropriately to the pubic only occasionally.

AR 743.

At step four, the ALJ found that prior to May 28, 2011, Mr. Quezada was unable to perform any past relevant work. AR 751. The ALJ found at step five, however, that prior to May 28, 2011, Mr. Quezada was not disabled. Relying on the VE testimony from the June 2017 hearing, the ALJ concluded that Mr. Quezada still could perform jobs that exist in significant numbers in the national economy, such as addresser and escort vehicle driver. AR 752. The Appeals Council did not assume jurisdiction of the case, and Mr. Quezada did not file exceptions

to the ALJ's decision, opting instead to file a complaint with this Court. Doc. 1. The ALJ's 2017 decision is the final decision of the Commissioner for purposes of judicial review. 20 C.F.R. § 404.984.

**IV.     Mr. Quezada's Claims**

Mr. Quezada raises two main arguments for reversing and remanding this case: (1) the ALJ's step-five findings are not based on substantial evidence because (a) the ALJ failed to resolve a conflict between the DOT and the VE testimony, and (b) the number of jobs is so low that it requires a *Trimiar*[8] analysis, which the ALJ did not do; and (2) the ALJ failed to properly account for the medical opinion of examining psychiatrist Dr. Paula Hughson, M.D. in violation of SSR 96-6p. Doc. 17. I remand this case and order an immediate award of benefits based on the ALJ's failure to resolve a conflict between the DOT and the VE testimony. I do not address the other alleged errors because they are moot.

**V.     Discussion**

    A. <u>The ALJ's Step Five Analysis</u>

At step five, it is the Commissioner's burden to establish that—considering the claimant's age, education, work experience, and RFC—work exists in significant numbers in the national economy that the claimant can perform. *Dikeman v. Halter*, 245 F.3d 1182, 1183 (10th Cir. 2001); *Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir.1999) ("If the ALJ concludes that the claimant cannot perform any of his past work with his remaining RFC, the ALJ bears the burden at step five to show that there are jobs in the regional or national economies that the claimant can perform with the limitations the ALJ has found him to have."). An ALJ may use a vocational expert at step five to supply an opinion about the claimant's ability to perform work in

---

[8] *Trimiar v. Sullivan*, 966 F.2d 1326 (10th Cir. 1992).

the national economy. *See Winfrey v. Chater*, 92 F.3d 1017, 1025 (10th Cir. 1996). When the ALJ uses a VE at step five, "the ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability." *Haddock*, 196 F.3d at 1091; *see also* SSR 00-04p, 2000 WL 1898704, at *4 ("When vocational evidence provided by a VE . . . is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the VE . . . evidence to support a determination or decision that the individual is or is not disabled."). After the Tenth Circuit's decision in *Haddock*, the SSA promulgated Social Security Ruling 00-4p and further clarified the ALJ's affirmative responsibility to ask about conflicts. Ruling 00-4p instructs that

> [w]hen vocational evidence provided by a VE or VS[9] is not consistent with information in the DOT, the [ALJ] must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled. The [ALJ] will explain in the determination or decision how he or she resolved the conflict. The [ALJ] must explain the resolution of the conflict irrespective of how the conflict was identified.

SSR 00-4p, 2000 WL 1898704, at *4.

The claimant's vocational factors of age, education, and work experience are considered, along with the claimant's RFC, to determine at step five whether there are a significant number of jobs that a claimant can perform. 20 CFR § 404.1560(c)(1). The vocational factor of education includes whether a claimant is illiterate, and whether he or she has the ability to communicate in English. The regulations state:

> (b) How we evaluate your education. . . . The term education also includes how well you are able to communicate in English since this ability is often acquired or improved by education. In evaluating your educational level, we use the following categories:

---

[9] "Vocational Specialist."

> (1) Illiteracy. Illiteracy means the inability to read or write. We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling.
>
> (2) Marginal education. Marginal education means ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs. We generally consider that formal schooling at a 6th grade level or less is a marginal education. . . .
>
> (5) Inability to communicate in English. Since the ability to speak, read and understand English is generally learned or increased at school, we may consider this an educational factor. Because English is the dominant language of the country, it may be difficult for someone who doesn't speak and understand English to do a job, regardless of the amount of education the person may have in another language. Therefore, we consider a person's ability to communicate in English when we evaluate what work, if any, he or she can do. It generally doesn't matter what other language a person may be fluent in.

20 C.F.R. § 404.1564(b).

The ALJ adopted the VE testimony regarding Mr. Quezada's ability to work as an addresser and an escort-vehicle driver. AR 752. Mr. Quezada argues that the ALJ did not resolve the conflict between the language requirements of the escort-vehicle driver job with the fact that he is unable to communicate in English. Doc. 17 at 18–19. I agree.

Both jobs identified by the VE in this case require a language level of "2."[10] *See* Addresser, DOT No. 209.587-010, 1991 WL 671797; Escort-Vehicle Driver, DOT No. 919.663-022, 1991 WL 687886.[11] Level-2 language skills require:

---

[10] Although Mr. Quezada only raises the language issue with regard to the escort-vehicle driver, the language level is the same for both jobs identified by the VE. My rulings therefore apply with equal weight to the addresser job.

[11] The language level for each occupation can be found in the "definition trailer" following the DOT description of each occupation. For example, the definition trailer for addresser, DOT No. 209.587-010, reads: GOE: 07.07.02 STRENGTH: S GED: R2 M1 L2 SVP: 2 DLU: 77. https://occupationalinfo.org/20/209587010.html (last visited March 27, 2019). The "general educational development," or "GED," component is divided into three sub-components: Reasoning Development (R); Mathematical Development (M); and Language Development (L).

> READING: Passive vocabulary of 5,000–6,000 words. Read at rate of 190−215 words per minute. Read adventure stories and comic books, looking up unfamiliar words in dictionary for meaning, spelling, and pronunciation. Read instructions for assembling model cars and airplanes.
>
> WRITING: Write compound and complex sentences, using cursive style, proper end [punctuation], and employing adjectives and adverbs.
>
> SPEAKING: Speak clearly and distinctly with appropriate pauses and emphasis, correct [punctuation], variations in word order, using present, perfect, and future tenses.

*Id*.

Mr. Quezada has a sixth-grade education which he received in Mexico, and he is literate in the Spanish language. There is no indication, however, that Mr. Quezada can function at the "level 2" requirements in English. Although the ALJ acknowledged in his decision that Mr. Quezada is not able to communicate in English, AR 751, he did not include in his hypothetical to the VE that Mr. Quezada was illiterate in English.[12] Further, there is no indication that the VE

---

*See* APPENDIX C − Components of the Definition Trailer, 1991 WL 688702. Thus, addresser job has a language level of 2.

[12] The first hypothetical posed to the VE by the ALJ at the June 2017 hearing was an individual who is

> [l]imited to sedentary work, that he would be able to lift, . . . less than 10 pounds frequently, 20 pounds occasionally; push and pull as much as he can lift and carry, so he'd be limited to sedentary work with no other limitations. However, he would have a mental limitation that would limit him to simple, routine tasks that he would only be able to respond appropriately to the public occasionally.

AR 791–92. The second hypothetical posed by the ALJ at the June 2017 hearing was an individual who is

> limited again to sedentary work; however, he would only be able to climb ramps and stairs occasionally; never ladders, scaffolds or ropes. He would have . . . occasional balancing issues, and stooping; never kneeling with his right knee; never crouching and never crawling. In addition, he would . . . be limited to perform simple, routine tasks; occasional contact with the public. However,

knew that Mr. Quezada did not speak English. Although Mr. Quezada was present with an interpreter at the February 2017 hearing, the VE who testified at the June 2017 hearing—at which Mr. Quezada did not appear—was not present at the February 2017 hearing. Neither the ALJ nor anyone else at the June 2017 hearing informed the VE that Mr. Quezada could not communicate in English. Consequently, the ALJ did not ask the VE to explain the apparent, unresolved conflict between the language levels required for the jobs identified and the VE's testimony that Mr. Quezada—a person who is illiterate in the English language—could perform those jobs.

The Commissioner argues that the escort-vehicle driver job indicates that it does not involve significant verbal interaction. The Commissioner points out that the "Speaking-Signaling" for the job is "Not Significant," and only requires a low degree of verbal aptitude. Doc. 20 at 8–9 (citing DOT #919.663-022, 1991 WL 687886). While this may be a reasonable resolution to the conflict (and the Court does not decide that it is), the ALJ did not ask the VE to resolve the conflict. Furthermore, the ALJ did not provide this, or any, explanation that resolved the conflict. Instead, the ALJ found that "[p]ursuant to SSR 00-4p, I have determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles." AR 752. The ALJ, therefore, did not rely on this post-hoc argument in support of his decision at step five. "[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself." *Haga v. Astrue*, 482 F.3d 1205, 1207–08 (10th Cir. 2007).

---

because of pain and unscheduled breaks the individual would likely miss more than two days a month due to knee pain.

AR 793–94.

The ALJ did not acknowledge any conflict between the VE's testimony and the DOT, nor did he elicit any explanation from the VE regarding the conflict between Mr. Quezada's inability to communicate in English and the jobs the VE identified that require a language level of 2. Accordingly, the ALJ failed to investigate and elicit a reasonable explanation for the conflict between the DOT and the VE's testimony before he relied on the VE's testimony as substantial evidence to support his determination of nondisability. This error requires remand.

B. Remand for an Immediate Award of Benefits

Mr. Quezada asks that if this Court remands this case, that it do so for an immediate award of benefits rather than additional proceedings. Doc. 17 at 27. "When a decision of the Secretary is reversed on appeal, it is within this court's discretion to remand either for further administrative proceedings or for an immediate award of benefits." *Ragland v. Shalala*, 992 F.2d 1056, 1060 (10th Cir. 1993). In deciding which remedy is appropriate, the Court considers both "the length of time the matter has been pending and whether or not given the available evidence, remand for additional fact-finding would serve any useful purpose but would merely delay the receipt of benefits." *Salazar v. Barnhart,* 468 F.3d 615, 626 (10th Cir. 2006) (internal citations and quotations omitted). When the Commissioner has failed to satisfy her burden of proof at step five, and when there has been a long delay as a result of her erroneous disposition of the proceedings, remand for an immediate award of benefits may be appropriate. *Ragland*, 992 F.2d at 1060 (remanding for an immediate award of benefits "[i]n light of the Secretary's patent failure to satisfy the burden of proof at step five[ ] and the long delay [of at least four years] that has already occurred as a result of the Secretary's erroneous disposition of the proceedings"). The Commissioner "is not entitled to adjudicate a case ad infinitum until [she] correctly applies the proper legal standard and gathers evidence to support [her] conclusion."

*Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F.3d 739, 746 (10th Cir. 1993).

This case has been pending for over ten years. There have been three administrative hearings, and this will mark the third remand from this Court. The remands have been based on a variety of issues, and this time Mr. Quezada has shown his disability at the first four steps of the sequential evaluation process. This case concerns whether Mr. Quezada was disabled between March 10, 2008 and May 28, 2011. The administrative record is complete as to this time period. Given that the ALJ determined that Mr. Quezada is capable of performing only a limited form of sedentary work, the additional limitation of being illiterate in English would only further erode the occupational base. The Court therefore finds that there is no reasonable probability that Mr. Quezada will be denied benefits, and requiring further proceedings before the Commissioner would merely delay the award.

## VI.     Conclusion

For the foregoing reasons, the Court finds that the ALJ failed to resolve a conflict between the DOT and the VE testimony and, therefore, improperly relied on the VE testimony at step five.

IT IS THEREFORE ORDERED that Jesus Quezada's Motion to Reverse and Remand (Doc. 17) is GRANTED. The Commissioner's final decision in this case is reversed, and the case is remanded for an immediate award of benefits.

*Laura Fashing*
Laura Fashing
United States Magistrate Judge
Presiding by Consent